IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **MEDICAL BUYERS GROUP, LLC d/b/a INTEGRITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CANDICE PENCE,** *et al.*,<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**3:25-cv-00105-TES** |

### ORDER ON ATTORNEY'S FEES

Before the Court are Motions for Attorney's Fees by Defendants Candice Pence ("Candice"), P4 Biologix ("P4"), and Lisa Pence ("Lisa"). [Doc. 54]; [Doc. 55]. Plaintiff Medical Buyers Group, LLC d/b/a Integrity ("Integrity") filed Responses to the Motions, challenging not only the amount of attorney's fees requested by each Defendant, but also the recoverability of fees at all in this case. [Doc. 56]; [Doc. 57]. For the following reasons, the Court **GRANTS** Defendants' Motions in part.

### BACKGROUND

Defendants previously filed Motions to Dismiss. [Doc. 30]; [Doc. 31]. Integrity filed Responses. [Doc. 34]; [Doc. 37]. Defendants then filed Replies to the Responses. [Doc. 40]; [Doc. 41]. In their Replies, Defendants pointed out that some of the cases Integrity cited in its Responses did not exist. *See, e.g.*, [Doc. 40, p. 2]. Defendants also mentioned sanctions against counsel for Integrity for citing to hallucinated cases, with

P4 and Lisa explicitly requesting that the Court impose sanctions. [Doc. 40, p. 2 ("As a result, the Court should not only dismiss the FAC, but should impose sanctions based on Integrity's improper use of fake legal authority.")]; [Doc. 41, p. 4 n.3 ("If that is the case, Plaintiff's conduct is sanctionable.")].

Because of these allegations, the Court issued an Order to Show Cause, and, because of the Court's error, an Amended Order to Show Cause. [Doc. 43]. In it, the Court found Defendant's allegations credible, ordered counsel for Integrity to show cause why he should not be sanctioned, and ordered all counsel who filed an entry of appearance or whose name appeared on any pleading in the case to attend the show cause hearing on November 18, 2025. [*Id.*]. Counsel for Integrity filed a Response in which he admitted to using hallucinated cases and detailed the steps he had already taken to remedy the mistake. [Doc. 44]. Those steps included telling Integrity about the mistake, requesting an amount for attorney's fees from Defendants' counsel, verifying all other case citations in each Response, preparing Amended Responses, changing the citation verification procedures in his law firm, and completing a continuing legal education course on "Common AI Mistakes." [*Id.* at pp. 11–12]. At the hearing, the Court informed counsel for Integrity that, because of his ownership of his mistakes, the only punishment the Court would impose is the payment of attorney's fees. [Doc. 51]. The Court then issued an Order giving Defendants 14 days to request attorney's fees and allowing counsel for Integrity a chance to respond to the requests. [Doc. 52].

2

Defendants filed their requests, and Integrity filed its Reponses. [Doc. 54]; [Doc. 55]; [Doc. 56]; [Doc. 57]. The Court now addresses the issue of attorney's fees and puts this AI saga to rest.

## **LEGAL AUTHORITY**

A court may issue sanctions under many sources. Relevant to this case, the authority to issue sanctions can come from Federal Rule of Civil Procedure Rule 11, the District Court's inherent authority, and the Court's local rules. Federal Rule of Civil Procedure 11 reads, in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> . . .
>>
>> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(c) Sanctions.**
>
>> **(1)** *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation . . .
>>
>> **(2)** *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets . . .

> **(3)** *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).
>
> **(4)** *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.
>
> **(5)** *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:
>
>> . . .
>>
>> **(B)** on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.
>
> **(6)** *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Fed. R. Civ. P. 11(b)–(c). If Rule 11's requirements are not met, a Court still has inherent authority to impose sanctions upon a finding of bad faith. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (stating that Rule 11 "does not displace a court's inherent power to impose sanctions for a parties' bad faith conduct").

"The Court's inherent power is derived from the Court's need 'to manage its own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Versant Funding, LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-cv-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (alterations accepted). "A court's 'inherent power extends to a full range of

4

litigation abuses' and 'must continue to exist to fill in the interstices.'" *Id.* (quoting *Chambers*, 501 U.S. at 46). The prerequisite for exercising its inherent authority to impose sanctions is a finding of bad faith. *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x. 930, 931 (11th Cir. 2006). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument . . . ." *Johnson v. Dunn*, 762 F. Supp. 3d 1241, 1252 (N.D. Ala. 2025) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)) (internal quotations omitted). Furthermore, if there is no evidence of subjective bad faith, the bad faith requirement may still be met if the attorney's conduct is "so egregious that it could only be committed in bad faith." *Id.* (quoting *Purchasing Power, LLC v. Bluestern Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir. 2017)).

Finally, the Court has power to sanction (although not necessarily award attorney's fees) under its local rules. Local Rule 83.2.1(B) states that "[d]iscipline for misconduct defined in these rules may consist of . . . monetary sanctions . . . or any other sanction the Court may deem appropriate." LR83.2.1(B), MDGa.

## DISCUSSION

Integrity's Responses are substantively almost identical, so the Court addresses both simultaneously. *Compare* [Doc. 56]; [Doc. 57]. Broadly speaking, in its Responses Integrity argues that the Court cannot impose sanctions under Rule 11 in this case. [Doc. 56, p. 2]. Upon consideration, the Court agrees. Defendants did not file separate

motions for sanctions, which is required to issue sanctions under Rule 11(c)(2).[1] Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately . . . ."). And, because Defendants didn't make a separate motion for sanctions under Rule 11, they necessarily could not have allowed Plaintiff the requisite 21-day safe harbor provision to cure the conduct that ran afoul of Rule 11. Fed. R. Civ. P. 11(c)(2); *see also Huggins v. Leuder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1346 (11th Cir. 2022) ("[H]e can draft a sanctions motion and serve it. . . [b]ut he cannot file that motion just yet. Instead, service of the motion notifies the opposing party of the possible violation and starts the 21-day safe harbor clock."). So, the Court cannot impose sanctions under Rule 11(c)(2).

That leaves 11(c)(3), which allows a court to issue a show cause order and sanction a party "on its own." Fed. R. Civ. P. 11(c)(3). However, Defendants Lisa and P4 requested the Court to sanction counsel for Integrity, so the Court is not acting *sua sponte* here. *See Perdum v. Wells Fargo Bank, N.A.*, No. 1:17-cv-972-SCJ, 2020 WL 1467252, at *1 n.3 (N.D. Ga. Jan. 6, 2020) (denying a request to impose sanctions under Rule 11(c)(3) because the Court is not acting *sua sponte*); *Ruhlen v. Holiday Haven Homeowners, Inc.*, 28 F.4th 226, 228 (11th Cir. 2022) (defining "motion" and stating that acting *sua sponte* is not granting or denying "anyone else's request"); *Aldabe v. Terracon Consultants, Inc.*, No. 3:22-cv-326-MMH-MCR, 2022 WL 2643589, at *1 n.1 (M.D. Fla. July

---

[1] To be clear, Defendants did file separate motions for attorney's fees. [Doc. 54]; [Doc. 55]. However, those Motions were in response to the Court's Order sua sponte finding that sanctions were warranted. [Doc. 52]. They are not separate motions for sanctions as required by Rule 11(c)(2).

6

8, 2022) ("If the Court acted on Plaintiff's requests, the Court would not be acting *sua sponte*."). Therefore, the Court cannot impose sanctions under Rule 11(c)(3). That means, as Integrity argues, the Court cannot impose sanctions under Rule 11 at all.

But, "the Court still has the inherent authority to impose sanctions on a party even when the Court would otherwise be prohibited from doing so under Rule 11." *Lechter v. Aprio, LLP*, 622 F. Supp. 3d 1297, 1309 (N.D. Ga. 2022) (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). As stated previously, this requires a showing of bad faith. *McDonald*, 186 F. App'x. at 931. The Court recognizes counsel for Integrity's sincerity in his apology and his thorough efforts to rectify the situation. The Court also recognizes that this was not intentional. However, courts have found that citing to hallucinated cases constitutes bad faith, even when unintentional. *See United States v. McGee*, No. 1:24-cv-112-TFM, 2025 WL 2888065, at *8 (S.D. Ala. Oct. 10, 2025) ("Given the broad attention given to the problem with AI generated cases . . . no attorney can claim ignorance . . . Accordingly, this misconduct is tantamount to bad faith and sanctionable under the Court's inherent authority."); *Johnson*, 762 F. Supp. 3d at 1252 ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument . . . .") (quoting *Barnes*, 158 F.3d at 1214) (internal quotations omitted); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 350 (E.D.N.Y. 2025) (finding bad faith despite sincere apologies and actions such as taking CLE courses on AI). This Court—like it said it would in the November 18, 2025, hearing—follows suit

7

and imposes sanctions in the form of attorney's fees under its inherent authority.

Imposing sanctions must comport with due process requirements. *In re Engle Cases*, 283 F. Supp. 3d 1174, 1203 (M.D. Fla. 2017). What does due process look like here? "In general, regardless of whether the Court invokes Rule 11, 28 U.S.C. § 1927, or its inherent authority, it must provide a lawyer (or a party) notice of the possibility of sanctions, the reasons why the court is contemplating sanctions, and an opportunity to respond." *Id.* at 1204 (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) ("Plainly, an attorney threatened with sanctions under § 1927 is entitled to a hearing.")); *see also Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1321 (11th Cir. 2002) (a lawyer facing sanctions under a court's inherent authority "must be provided with notice and 'an opportunity to respond orally or in writing, to the invocation of such sanctions and to justify his actions.'") (quoting *In re Mroz*, 65 F.3d at 1575–76). That has occurred here. The Court issued a show cause order informing counsel for Integrity of his alleged wrongdoing and the possibility of sanctions, provided him with an opportunity to respond, held a hearing, required the parties to make their own motions for attorney's fees, and then allowed counsel for Integrity to respond to those motions. [Doc. 43]; [Doc. 44]; [Doc. 51]; [Doc. 52]; [Doc. 56]; [Doc. 57]. Counsel for Integrity has had notice and opportunities to respond at each step of the sanctions process.

With due process satisfied, the Court turns to the issue of the amount of fees

counsel for Integrity owes each Defendant. P4 and Lisa's attorneys seek $9,560.83. [Doc. 54, p. 1]. Candice's attorneys seek $12,028.50. [Doc. 55, p. 1]. In total, Defendants' attorneys seek $21,589.33 in attorney's fees.

"When a court uses its inherent authority to award a sanction in the form of attorney's fees, legal fees awarded 'must be compensatory rather than punitive'—at least in civil litigation." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)). "Because the purpose of this fee-shifting mechanism is to reimburse the victim, a causal connection is required between the fees awarded and the sanctioned party's misconduct." *Id.* (citing *Goodyear*, 581 U.S. at 108–09). In other words, the fees must "not have incurred 'but for'" the misconduct. *Id.* (citing *Goodyear*, 581 U.S. at 109).

The process for determining the amount of fees awarded is a case-by-case analysis. As the Eleventh Circuit explained,

> the court's fundamental job is to decide whether a legal fee would have existed even without the sanctioned conduct. This sometimes means evaluating each specific litigation expense—but not always. The Supreme Court has been careful to avoid turning judges into auditors: courts assessing fees need not, and indeed should not, become green-eyeshade accountants. So rough justice is the aim, not auditing perfection.
>
> Along these lines, a district court may consider its overall sense of the suit and use estimates in calculating and allocating an attorney's time. It could decide, for example, that all (or a set percentage) of a particular category of expenses satisfy the standard. In exceptional cases, the court could even award all fees incurred after some significant event during the litigation.

*Id.* (internal citations omitted) (internal quotations omitted). Accordingly, the Court

reviewed Defendants' requests and counsel for Integrity's line-item objections. [Doc. 54-1]; [Doc. 55-1]; [Doc. 56-1]; [Doc. 57-1]. The Court also considered the "overall sense of the suit" and its goal in effectuating justice in the form of compensation rather than punishment. Specifically, the Court considered that this is a case with multiple Defendants who should be compensated for wasting time researching hallucinated cases. After all, it should be time consuming to acquire enough confidence in the non-existence of something to accuse the other party of fabricating it. At the same time, requiring counsel for Integrity to pay twice for one wrong errs toward punishment rather than compensation. And—since it is a significant portion of the requested fees—all counsel for Defendants were present at the show cause hearing, but the Court imposed that requirement, not counsel for Integrity. To require counsel for Integrity to pay for the Court's order also errs toward punishment. With those considerations in mind, the Court exercises its considerable discretion under its inherent powers and **ORDERS** counsel for Integrity to pay *$10,000 in attorney's fees* as sanctions for citing nonexistent cases hallucinated by AI. Counsel will pay $5000 to counsel for P4 and Lisa, and $5000 to counsel for Candice within 60 days.

    **SO ORDERED**, this 20th day of January, 2026.

                                    S/ Tilman E. Self, III
                                    **TILMAN E. SELF, III, JUDGE**
                                    **UNITED STATES DISTRICT COURT**